O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| JOSE CALDERON, | ) | Case No. CV 07-07312-MLG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the | ) | |
| Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Jose Calderon ("Plaintiff") seeks review of the Commissioner's final decision denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons discussed below, the Commissioner's decision is reversed and remanded for further proceedings.

I.   **Factual and Procedural Background**

Plaintiff was born on January 24, 1965. (Administrative Record ("AR") at 23, 56, 248). He has past relevant work experience as a

1   janitor. (AR at 607). Plaintiff has a tenth grade education.[1] (AR at
2   595).

3        Plaintiff filed applications for DIB and SSI on March 21, 1994,
4   alleging that he has been disabled and unable to work since February 19,
5   1993, due to: injuries to his right hand and back; pain and stiffness in
6   his right hand, back, left hip and left shoulder; difficulty sitting,
7   standing, walking, bending, squatting; and an inability to grip, grasp
8   or squeeze objects for a long time.[2] (AR at 23, 62-67, 91, 99). Plaintiff
9   also asserts that he suffers from a mental impairment. (AR at 26). The
10  Social Security Administration denied benefits at the initial and
11  reconsideration stages of the administrative process. (AR at 68-74, 77-
12  80, 247).

13       At Plaintiff's request, an administrative hearing was held before
14  Administrative Law Judge Earl J. Waits ("ALJ Waits"). (AR at 45-61,
15  247). On May 26, 1995, ALJ Waits issued a decision ("Decision #1")
16  finding that Plaintiff was not under a disability, as defined in the
17  Social Security Act. (AR at 22-31); *see* 20 C.F.R. §§ 404.1520(e),
18  416.920(e). The Appeals Council denied review. (AR at 3-4).

19       Plaintiff commenced an action seeking review in this Court. On July
20  29, 1998, this Court remanded the case to the Commissioner for further
21  consideration of medical evidence concerning Plaintiff's right wrist
22  impairment. *Calderon v. Apfel*, Case No. CV 96-4891-HLH (BQR); (AR at
23  328-52).

24  //

25

26       [1] Plaintiff claims he did not complete the eighth grade. (AR at
    101, 270, 1041).
27
28       [2] Plaintiff filed a second set of applications for DIB and SSI on
    March 26, 1997. (AR at 594).

A supplemental hearing was conducted, and on March 16, 2001, ALJ Waits issued a decision ("Decision #2") denying Plaintiff's requests for benefits. (AR at 247-59, 261-306). Plaintiff sought review in this Court. On October 14, 2004, this Court remanded the case to the Commissioner for further consideration of medical records from the Hollywood Sunset Free Clinic and psychiatrist William Vicary, M.D. concerning Plaintiff's alleged mental impairment. *Calderon v. Barnhart*, Case No. CV 03-5655-MLG; (AR at 610-20).

On October 3, 2005, an administrative hearing was held before Administrative Law Judge Alexander Weir III ("ALJ Weir"). (AR at 941-1011). On January 5, 2006, ALJ Weir issued a decision ("Decision #3") concluding that Plaintiff was not disabled. (AR at 796-816). The Appeals Council disagreed with ALJ Weir and remanded Plaintiff's case for further consideration of the medical evidence. (AR at 824-25).

A fourth administrative hearing was conducted, and on June 22, 2007, ALJ Weir determined that Plaintiff was not disabled ("Decision #4"). (AR at 593-608). Specifically, ALJ Weir found that Plaintiff suffered from chronic neck and back strain, and that Plaintiff has a history of a cartilage tear in the right wrist, but that Plaintiff's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1. (AR at 605-06). While Plaintiff had been receiving treatment for anxiety and depression, ALJ Weir found that Plaintiff's mental condition was under good control and therefore, not a severe impairment (*i.e.*, Plaintiff's mental condition had only a mild impact on his daily living activities, social functioning and ability to maintain concentration, persistence and pace, and there was no evidence of any episodes of decompensation of extended duration). (AR at 605). After rejecting Plaintiff's allegations

3

regarding his limitations as not credible, ALJ Weir assessed Plaintiff with the residual functional capacity for medium work (*i.e.,* lift and carry 50 pounds occasionally and 25 pounds frequently, and stand, walk and sit for about six hours in an eight-hour workday). (AR at 604-07). ALJ Weir concluded that Plaintiff remains capable of performing his past relevant work as a janitor, as that work is generally performed in the national economy. (AR at 606-08). The Appeals Council denied review and Decision #4 became the final decision of the Commissioner. Plaintiff then commenced this action for judicial review.

Plaintiff raises the following arguments:

1.   ALJ Weir erred by disregarding the opinions of Plaintiff's treating physicians. (Joint Stipulation at 20-27, 39-44).

2.   ALJ Weir erred in finding that Plaintiff's mental impairment was not "severe." (Joint Stipulation at 44-47, 49-52).

3.   ALJ Weir erred in his assessment of Plaintiff's credibility. (Joint Stipulation at 52-55, 58-59).

4.   ALJ Weir's assessment of Plaintiff's residual functional capacity is not supported by substantial evidence. (Joint Stipulation at 59-64).

5.   ALJ Weir failed to properly consider Plaintiff's obesity. (Joint Stipulation at 64-67).

Plaintiff seeks a remand for payment of benefits. (Joint Stipulation at 67-68). The Commissioner requests that Decision #4 be affirmed. (AR at 69-70). The Joint Stipulation has been taken under submission without oral argument.

//

4

## II.  **Standard of Review**

The Court must uphold the Social Security Administrations's disability determination unless it is not supported by substantial evidence or is based on legal error. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)(citing *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). Substantial evidence means more than a scintilla, but less than a preponderance; it is evidence that a reasonable person might accept as adequate to support a conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute [its] judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

## III.  **Discussion**

### A.  **Plaintiff's Mental Impairment**

Plaintiff contends that ALJ Weir improperly disregarded the opinions of his treating psychiatrist, William Vicary, M.D., and other treating physicians at the Hollywood Sunset Community Clinic concerning his mental impairment.[3]

---

[3]  Most of Plaintiff's mental health progress reports from the Hollywood Sunset Community Clinic bear illegible initials on the physician's signature line. (AR at 315, 318, 320-26, 696, 703, 725, 735, 746, 750, 752, 760, 767, 772, 779, 781, 875, 879, 892, 925, 928). These reports appear to have been signed by Dr. Vicary. (*See* AR at 876; *see*

1    Plaintiff began receiving mental health treatment at the Hollywood

2  Sunset Community Clinic in January 1997. (AR at 313, 327). Plaintiff

3  complained of hearing voices, sleep disturbance, and stress. (AR at

4  327). Dr. Vicary diagnosed Plaintiff with anxiety and depression. (AR at

5  326).

6    Dr. Vicary continued to treat Plaintiff on a regular basis over the

7  next ten years. His records suggest an increasing level of mental

8  impairment. (AR at 314-15, 318, 320-26, 696, 703, 725, 735, 750, 752,

9  760, 767, 772, 779, 781, 784-87, 874-75, 879, 892, 899, 911-14, 925,

10  928). For example, in July 2000, Dr. Vicary assessed Plaintiff's ability

11  to perform various work-related activities on a day-to-day basis as

12  "fair" to "poor."[4] (AR at 314).

13    On September 1, 2000, and June 7, 2002, Dr. Vicary opined that

14  Plaintiff was disabled due to a generalized anxiety disorder and

15  cyclothymia.[5] (AR at 556, 689).

16    In a Mental Impairment Questionnaire completed in September 2005,

17  Dr. Vicary diagnosed Plaintiff with major depression and assessed

18  Plaintiff with a Global Assessment of Functioning ("GAF") scale of 50

19

20  _also_ Joint Stipulation at 35).

21    [4] Specifically, Dr. Vicary rated Plaintiff as "poor" in his ability

22  to: deal with the public; use judgment; deal with work stresses;
    function independently; understand, remember, and carry out complex or

23  detailed instructions; and relate predictably in social situations. (AR
    at 314). Dr. Vicary rated Plaintiff as "fair" in his ability to: follow

24  work rules; relate to coworkers; interact with supervisors; function
    independently; understand, remember, and carry out simple instructions;

25  maintain personal appearance; behave in an emotionally stable manner;
    and demonstrate reliability. _Id._

26

27    [5] Cyclothymia is "a mood disorder characterized by numerous
    alternating short cycles of hypomanic and depressive periods with

28  symptoms like those of manic and major depressive episodes but of lesser
    severity." Dorland's Illustrated Medical Dictionary 529 (29th ed. 2000).

indicating serious symptoms or serious impairment with social and occupational functioning. Diagnostic and Statistical Manual of Mental Disorders (4th ed.) ("DSM-IV") at 32. (AR at 784). Dr. Vicary found that Plaintiff had "moderate" restrictions of activities of daily living, "marked" difficulties in maintaining social functioning, "extreme" deficiencies of concentrations persistence or pace, and "four or more" episodes of decompensation. (AR at 786). In support of his opinion, Dr. Vicary referred to clinical findings such as dysphoria, sleep disturbance, irritability, and social withdrawal. (AR at 784). Dr. Vicary also noted the presence of a variety of other symptoms (*i.e.*, anhedonia; decreased energy; feelings of guilt or worthlessness; impairment in impulse control; generalized persistent anxiety; somatization unexplained by organic disturbance; mood disturbance; pathological dependence; passivity or agressivity; persistent disturbances of mood or affect; change in personality; paranoid thinking or inappropriate suspiciousness; emotional withdrawal or isolation; intense and unstable interpersonal relationships and impulsive and damaging behavior; emotional lability; deeply ingrained, maladaptive patterns of behavior; sleep disturbance; oddities of thought, perception, speech or behavior; and a history of multiple physical symptoms). (AR at 785). Dr. Vicary concluded that Plaintiff's prognosis was "poor." (AR at 784).

In January 2007, Dr. Vicary opined that Plaintiff's major depression prevented Plaintiff from being gainfully employed. (AR at 899).

Dr. Vicary completed a second Mental Impairment Questionnaire in May 2007. (AR at 911-14). As in the September 2005 questionnaire, Dr. Vicary diagnosed Plaintiff with major depression. (AR at 911). In

addition to citing the clinical findings and symptoms previously identified, Dr. Vicary also reported that Plaintiff had been experiencing tearful episodes, anxiety attacks, appetite disturbance with weight change, difficulty thinking or concentrating, motor tension, inflated self-esteem, unrealistic interpretation of physical signs or sensations, easy distractibility, autonomic hyperactivity, and memory impairment. (AR at 911-12). Dr. Vicary further noted that Plaintiff suffered from reduced intellectual functioning that was related to his depression, and that Plaintiff's anxiety and depression intensified his physical pain. (AR at 913). Dr. Vicary concluded that Plaintiff's prognosis was "poor." (AR at 911).

The medications that Dr. Vicary prescribed for Plaintiff's mental condition also indicated a mental impairment of increasing severity. Initially, Plaintiff was treated with a single antidepressant or anti-anxiety medication (amitriptyline or diazepam). (AR at 323-27). In 1998, Dr. Vicary modified Plaintiff's medication regimen to include both an anti-anxiety medication (Buspar) and an antidepressant (amitriptyline). (AR at 321). In 1999, Dr. Vicary added a medication indicated for the treatment of schizophrenia (Risperdal). (AR at 315, 694). Since November 2004, Plaintiff has been taking a combination of three drugs: an antidepressant (Lexapro), medication for the treatment of major depressive disorder (Wellbutrin) and Risperdal. (AR at 779, 781, 874-75, 879, 884, 890, 892, 899).

ALJ Weir reviewed Dr. Vicary's treatment notes and his opinions as to Plaintiff's mental impairment. (AR at 601-03, 807). However, ALJ Weir rejected Dr. Vicary's opinion and concluded that Plaintiff did not even suffer from a severe mental impairment. (AR at 603, 605). In support of his decision, ALJ Weir criticized Dr. Vicary's treatment records as

"sketchy" and "lacking in rationale." (AR at 603). He explained that Dr. Vicary's records did not show that Plaintiff had the degree of mental problems identified in the Mental Impairment Questionnaires. (AR at 603). While Dr. Vicary's opinion may not have been conclusive on the ultimate issue of disability, *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989), it was improper for ALJ Weir to reject Dr. Vicary's opinion solely due to a lack of supporting evidence. *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (When a treating physician diagnosed claimant with depression, set forth clinical observations supporting the diagnosis, and prescribed psychotherapeutic drugs, ALJ erred in finding claimant had not set forth sufficient evidence to substantiate mental impairment). Dr. Vicary's records reveal that every time he examined Plaintiff, he assessed Plaintiff's mental status and evaluated Plaintiff's medications. While his notations were often brief, he described his clinical findings and Plaintiff's symptoms in greater detail in the Mental Impairment Questionnaires. (AR at 784-87, 911-14). If ALJ Weir questioned the objective basis for Dr. Vicary's opinion, he should have inquired further. *See, e.g., Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *see also Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (ALJ's duty to fully and fairly develop the record exists even when the claimant is represented by counsel).

   In rejecting Dr. Vicary's opinion, ALJ Weir adopted the opinions of three examining doctors, psychologist Harrell Reznick, Ph.D., psychologist David Fox, Ph.D., and psychiatrist Ernest Bagner, III, M.D. (AR at 603, 605, 807, 812). These doctors, each of whom examined Plaintiff on only a single occasion,[6] concluded that Plaintiff did not

---

   [6] Dr. Reznick examined Plaintiff in 2000, and Dr. Fox and Dr. Bagner examined Plaintiff in 2005. (AR at 359-66, 630-36, 646-48).

suffer from a mental impairment that would preclude him from performing work related activities. (AR at 367-68, 630-33, 646-47). Specifically, Dr. Reznick found that Plaintiff was capable of: performing simple and repetitive tasks with minimal supervision and with appropriate persistence and pace over a normal work cycle; adjusting adequately to minor to moderate variation in work routine; understanding, remembering and carrying out all simple and most moderately complex verbal instructions; adhering to basic work and safety standards; and getting along satisfactorily with others in the workplace, including some contact with the general public. (AR at 365-66). Dr. Fox found that Plaintiff had no clinical disorder and did "not demonstrate impairment which would preclude him, at a cognitive or emotional level, from pursuing some level of productive functioning at a low normal level." (AR at 648). Dr. Bagner diagnosed Plaintiff with depressive disorder, NOS in remission and rule out anti-social personality disorder. (AR at 632). He opined that Plaintiff would have "no limitations" completing simple or complex tasks, completing a normal work week without interruption, maintaining concentration and attention, interacting with supervisors, peers and the public, or handling normal stresses at work. (AR at 633). Plaintiff contends, and the Court agrees, that these examining doctors' opinions were not a valid basis for rejecting Dr. Vicary's opinion.

    A treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record. *Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir. 2007); 20 C.F.R. § 404.1527(d)(2). The ALJ may not reject the opinion of a treating physician, even if it is contradicted by the opinion of another doctor, without first providing specific and legitimate reasons

supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983) ("if the ALJ wishes to disregard the opinion of the treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record"). An examining physician's opinion constitutes substantial evidence if the physician relied on "independent clinical findings that differ from the findings of the treating physician." *Orn*, 495 F.3d at 631-32. Even if there is substantial evidence in the record contradicting a treating physician's opinion, the opinion is "still entitled to deference and must be weighed using the following factors: "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), 416.927(d)(2)(i)-(ii); *Orn*, 495 F.3d at 631-33. Other factors to be considered include the supportablility of the treating physician's opinion, consistency with the record as a whole, the specialization of the physician, and the extent to which the physician is familiar with disability programs and evidentiary requirements. 20 C.F.R. §§ 404.1527(d)(3)-(6), 416.927(d)(3)-(6). Thus, "[i]n many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." S.S.R. 96-2p; *Orn*, 495 F.3d at 632-633.

Here, while the opinions of Dr. Reznick, Dr. Fox and Dr. Bagner constitute substantial evidence, Dr. Vicary's opinion was still entitled to deference. SSR 96-2p; *Orn*, 495 F.3d at 632-633. Indeed, the factors

11

1   identified in the regulations weigh in favor of Dr. Vicary's opinion. 20

2   C.F.R. §§ 404.1527, 416.927. For example, the nature and extent of

3   Plaintiff's relationship with Dr. Vicary provides a unique longitudinal

4   perspective on Plaintiff's mental condition, adding weight to Dr.

5   Vicary's opinion. *See* 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii),

6   416.927(d)(2)(i)-(ii); *Orn*, 495 F.3d at 633. As discussed above, the

7   lengthy administrative record contains countless medical forms and

8   progress reports completed by Dr. Vicary over a 10 year period. Dr.

9   Vicary offered diagnoses of Plaintiff's mental condition, made clinical

10  findings, assessed Plaintiff's ability to work, and prescribed a variety

11  of medications. While Dr. Vicary's progress notes do not reveal detailed

12  discussions regarding Plaintiff's mental condition, "[t]he primary

13  function of medical records is to promote communication and

14  recordkeeping for health care personnel – not to provide evidence for

15  disability determinations." *Orn*, 495 F.3d at 634. And, Dr. Vicary did

16  provide a more reasoned explanation for his opinion in the Mental

17  Impairment Questionnaires by referring to Plaintiff's symptoms, signs,

18  and prognosis. (AR at 784-87, 911-14); *see* 20 C.F.R. §§ 404.1527(d)(3)

19  ("Supportability. The more a medical source presents relevant evidence

20  to support an opinion, particularly medical signs and laboratory

21  findings, the more wweight we will give that opinion."), 416.927(d)(3)

22  (same); *see also Orn*, 495 F.3d at 634 ("a medical condition [need not]

23  be mentioned in every report to conclude that a physician's opinion is

24  supported by the record"). Thus, when viewed in its entirety, the record

25  provides ample support for Dr. Vicary's opinion.

26      ALJ Weir's finding at step two of the sequential analysis is also

27  not supported by substantial evidence. In concluding that Plaintiff does

28  not suffer from a severe mental impairment, ALJ Weir listed two reasons

12

in addition to his reliance on the examining doctors' opinions. (AR at 605). Neither of these reasons were proper. ALJ Weir discounted Plaintiff's mental impairment because he received "fairly irregular" treatment and had not visited the emergency room with mental complaints. (AR at 605, 807). As the record reflects, however, Plaintiff was treated by Dr. Vicary on numerous occasions over a ten year period. (AR at 315, 318, 320-26, 696, 703, 725, 735, 746, 750, 752, 760, 767, 772, 779, 781, 875, 879, 892, 925, 928). And, claimants are not required to seek psychiatric treatment in order to establish a mental illness. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation"); *see also Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (explaining that a failure to seek treatment should not be used as a basis for rejecting a physician's opinion). Thus, ALJ Weir's finding that Plaintiff does not suffer from a severe mental impairment is not supported by substantial evidence.[7] *Corrao v. Shalala*, 20 F.3d 943, 949 (9th Cir. 1994) (an impairment should be found to be "non-severe" only when the evidence establishes merely a slight abnormality, with no more than minimal effect on ability to work) (citing *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (citing Social Security Ruling 85-28 (1985)); *Smolen*, 80 F.3d at 1290 ("the step two inquiry is a *de minimis* screening device to dispose of

---

[7]    Although this Court previously determined that ALJ Waits' Decision #1 finding that Plaintiff did not suffer from a severe mental impairment was supported by substantial evidence, the evidence from Dr. Vicary and the Hollywood Sunset Community Clinic pertained to treatment received after Decision #1 was issued. (AR at 22-31, 350).

1    groundless claims") (citations omitted).[8]

2

3    **IV.   Conclusion**

4           The decision whether to remand for further proceedings is within

5    this Court's discretion. *See Connett v. Barnhart*, 340 F.3d 871, 876 (9th

6    Cir. 2003); *Harman v. Apfel*, 211 F.3d 1172, 1175-1178 (9th Cir. 2000).

7    Where no useful purpose would be served by further administrative

8    proceedings, or where the record has been fully developed, it is

9    appropriate to exercise this discretion to direct an immediate award of

10   benefits. *Harman*, 211 F.3d at 1179 ("the decision of whether to remand

11   for further proceedings turns upon the likely utility of such

12   proceedings"). However, where there are outstanding issues that must be

13   resolved before a determination of disability can be made, and it is not

14   clear from the record that the ALJ would be required to find the

15   claimant disabled if all the evidence were properly evaluated, remand is

16   appropriate. *Id.; Bunnell v. Barnhart*, 336 F.3d 1112, 1115-16 (9th Cir.

17   2003).

18          Here, there are outstanding issues that must be resolved before a

19   determination of disability can be made. *See, e.g. Bunnell*, 336 F.3d at

20   1115-16 (remanding for reconsideration where, inter alia, ALJ "failed to

21   provide adequate reasons for rejecting the opinion of the treating

22   physicians" and "did not properly reject [the claimant's] subjective

23

24          [8]   As noted above, Plaintiff raises several other challenges to
25   Decision #4 in the Joint Stipulation. As the issue of Plaintiff's mental
     impairment requires further consideration on remand, and the record is
26   not sufficiently developed to support a determination of disability
     without further proceedings, the Court will not decide whether the
27   remaining issues raised by Plaintiff would independently require
     reversal. However, the Court recommends that, on remand, the
28   Commissioner consider all of Plaintiff's arguments when determining the
     merits of his case.

                                      14

complaints"). As ALJ Weir failed to adequately evaluate Dr. Vicary's opinion and the severity of Plaintiff's mental condition, issues remain as to Plaintiff's ability to perform his past work or other work that exists in significant numbers in the economy. Thus, the Court cannot find that "the record has been fully developed" or that "further administrative proceedings would serve no useful purpose." *See Smolen*, 80 F.3d at 1292. Consequently, the Court will not grant Plaintiff's request to remand the action for calculation of benefits. Instead the Court finds that further administrative proceedings is necessary.

## ORDER

**IT IS HEREBY ORDERED** that this action is **REMANDED** to defendant, pursuant to Sentence Four of 42 U.S.C. § 405(g), for further proceedings as described above.

Dated:   September 18, 2008

_____
Marc L. Goldman
United States Magistrate Judge